UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ICE ZONE PARTNERS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-CV-859 PLC |
| | ) |
| CHICAGO TITLE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

This matter is before the Court on Defendant Chicago Title Insurance Company's motion to dismiss, filed July 5, 2024 (ECF No. 11). Plaintiff filed a Petition in the Circuit Court of St. Louis County, Missouri on May 13, 2024. (ECF No. 7 (hereinafter "Complaint" or "Compl.")). Plaintiff asserts one claim for breach of contract based on Defendant's refusal to pay certain liens resulting in ongoing lien obligations on the Property, and failure to provide Plaintiff a complete defense to claims made against it. Defendant removed the case to this Court on June 20, 2024, on the basis of diversity jurisdiction. (ECF No. 1).

In its motion to dismiss, Defendant asserts that Plaintiff's claimed loss falls within an exclusion from coverage. Specifically, Defendant contends that the following matters are expressly excluded from coverage of the Policy: Those that "arise by reason of…[d]efects, liens, encumbrances, adverse claims, or other matters created, suffered, assumed, or agreed to by the Insured Claimant." (*See* Compl., att. exh. 1, P. 2). Defendant maintains Plaintiff knew of and agreed to the liens and encumbrances at issue, and so there exists no coverage under the Policy. (ECF No. 11).

1

For the reasons set forth below, the motion is denied.

**BACKGROUND**

Plaintiff Ice Zone Partners, LLC is a limited liability company organized and operating under the laws of the State of Missouri. (Compl., ¶ 1). In July of 2016, Plaintiff purchased and received a deed to the real property at 5555 St. Louis Mills Blvd., Unit 1, St. Louis MO, 63042 (the "Property"). (*Id.*, ¶ 6). The sale of the Property closed on July 28, 2016. (*Id.*, ¶ 7). On July 28, 2016, Plaintiff obtained an Owners' Policy of Title Insurance, issued by Defendant Chicago Title Insurance Company (the "Policy"), insuring title to the Property. (*Id.*, ¶ 10).

The Property is part of a larger parcel of real estate commonly referred to as the St. Louis Mills Mall (the "Mall Property"). (Compl., ¶ 12). The Mall Property is located within both a Community Improvement District (a "CID") and a Transportation Development District (a "TDD") (collectively the "Districts"). (*Id.*, ¶ 14). Both Districts had already been formed and approved by the applicable governing agencies by the time Plaintiff closed on its purchase of the Property and the Policy was issued. (*Id.*, ¶ 17).[1]

On December 6, 2000, via Resolution No. 00-002, and September 30, 2002, via Resolution No. 02-005, the TDD's Board of Directors authorized the imposition of a one percent sales tax within the boundaries of the TDD. (Compl., ¶ 18 and att. exhs. 2, 3). On October 24, 2002, via Resolution No. 02-007, the TDD Board of Directors authorized the levying of a special assessment on properties within the boundaries of the TDD. (*Id.*, ¶ 19 and att. exh. 4). On December 1, 2003,

---

[1] The City of Hazelwood, Missouri, established the CID, named the 370/Missouri Bottom Road/Taussig Road Community Improvement District, on October 15, 2003. (Compl., ¶ 15 and att. exh. 5). On November 1, 2000, the Circuit Court of the County of St. Louis entered a Judgment and Order establishing the TDD, named the 370/Missouri Bottom Road/Taussig Road Transportation Development District. (*Id.*, ¶ 16 and att. exh. 2).

2

via Resolution No. 03-003, the CID's Board of Directors authorized the imposition of a Special Assessment for the CID. (*Id.*, ¶ 20 and att. exh. 5). According to Plaintiff, the documents concerning the formation of the CID and TDD, and their power to levy sales taxes and assessments, were available in the public records at the time Plaintiff closed on its purchase of the Property. (*Id.*, ¶ 21).

The TDD and CID levied and continue to levy special assessments against the Property. (Compl., ¶ 22). The total amount levied against the Property since 2016 exceeds $500,000.00. (*Id.*, ¶ 23). Plaintiff maintains the special assessments that the TDD and CID levied are liens of real estate taxes or assessments imposed on the title to the Property, and therefore are covered risks under the Policy. (*Id.*, ¶ 25). Plaintiff further asserts the imposition of the TDD and CID liens rendered Plaintiff's title to the Property unmarketable, which is also a covered risk under the Policy. (*Id.*, ¶ 26). Defendant did not list the resolutions or ordinances relating to the CID or TDD, or the potential for assessments, in its exceptions to title to the Property. (*Id.*, ¶ 27). Plaintiff maintains it did not have knowledge of the existence of the TDD and CID, much less their power to levy special assessments on the Property, prior to closing on the purchase of the Property. (*Id.*, ¶ 28).

On July 15, 2021, Plaintiff issued a demand upon Defendant to defend Plaintiff's title from the assessments. (Compl., ¶ 29 and att. exh. 6). Plaintiff concluded its demand as follows: "Please be advised that, in order to preserve the Insured's claim under the applicable statutes of limitation, we may be required to file suit before you have had the opportunity to investigate the claim and respond to the demands set forth herein." (Plaintiff's exh. 6, P. 4).

On July 16, 2021, Plaintiff filed a Petition for Declaratory Judgment against Defendant in the Circuit Court of St. Louis County. (Defendant's Motion to Dismiss, ¶ 11 and att. exh. A). Plaintiff sought a declaration that the Policy requires Defendant to, among other things, pay the Districts' assessments against the Property and defend the title to the Property. (*Id.*). Plaintiff dismissed its Petition for Declaratory Judgment on August 3, 2021, pursuant to an Agreement to Toll and Extend Statutes of Limitations it entered into with Defendant. (*Id.*, ¶ 18; Compl., att. exh. 7).

On July 27, 2021, Plaintiff filed suit against the Districts and others in the Circuit Court of St. Louis County (the "District Litigation"). (Defendant's Motion to Dismiss, ¶ 13 and att. exh. B). On August 6, 2021, Plaintiff filed a First Amended Petition in the District Litigation. (Defendant's Motion to Dismiss, ¶ 15 and att. exh. C). Plaintiff stated in its First Amended Petition as follows:

> 21. As set forth in the 370 CIF Resolution No. 03-003, the 370 CID represented the manner and formula under which special assessments would be levied, the limitation on such special assessments, and the circumstances under which the special assessments could be reallocated.
>
> 22. Ice Zone relied upon the representations made by the 370 CID as set forth in 370 CID Resolution No. 03-003 in purchasing its Unit.
>
> 23. As set forth in the 370 TDD Resolution No. 02-007 (described in greater detail in Paragraphs 69 through 72 herein), the 370 TDD represented the manner and formula under which special assessments would be levied, the limitation on such special assessments, and the circumstances under which the special assessments could be reallocated.
>
> 24. Ice Zone relied upon the representations made by the 370 TDD as set forth in 370 TDD Resolution No. 02-007 in purchasing its Unit.

(Defendant's Exh. C, ¶¶ 21-24 ). Plaintiff's claims in its First Amended Petition included fraud/intentional misrepresentation (Count V) and negligent misrepresentation (Count VI), based

4

on the Districts and the City of Hazelwood "falsely [or negligently] represent[ing] that the 370 CID and the 370 TDD would be conducted in accordance with Missouri law and their respective resolutions", and "fail[ing] to disclose the reallocation scheme and ability of the 370 TDD and the 370 CID through implementation of the scheme to devalue and render unmarketable properties in the Districts not owned by the 370 TDD or the 370 CID." (*Id.*, ¶¶ 185-208).[2] Plaintiff continued as follows:

> 194. Ice Zone did not know and could not have known that the Defendants intended to actually or constructively remove properties and reallocate assessments by treating properties acquired by the 370 TDD as exempt, thereby shifting the assessment amounts properly allocated to the Residual Lots onto the remaining private property owners which include Ice Zone.
>
> 195. Ice Zone relied on Defendants' respective representations and omissions that the assessments were reasonable, would lead to the improvement of the properties within the Districts, and would be assessed upon the properties based on the total acreage of the district boundaries being approximately 174 acres and collected in accordance with the applicable statutes, Resolutions and agreements.

(*Id.*, ¶¶ 194-195).

On December 1, 2021, Defendant sent Plaintiff a notice of denial of coverage under the Policy. (Defendant's Motion to Dismiss, ¶ 19 and att. exh. D). Defendant referenced Plaintiff's factual allegations in Counts V and VI of its First Amended Petition in the District Litigation, regarding the representations that Plaintiff relied on in purchasing the Property. (*Id.*, ¶ 20). Defendant's denial letter continued as follows:

> Resolution No. 03-003 and Resolution No. 02-007 may constitute defects in liens or encumbrances on the title to the Property and they are not listed as Exceptions in Schedule B of the Policy. Coverage under the Policy, however, is subject to the

---

[2] The "reallocation scheme" is described in paragraphs 103-131 of Plaintiff's First Amended Petition.

5

>Exceptions From Coverage, the Exclusions From Coverage, and the Conditions and Stipulations.
>
>The Exclusions from Coverage provide, in part, as follows:
>
>>EXCLUSIONS FROM COVERAGE
>>
>>*The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:*
>>
>>>....
>>>
>>>3.     *Defects, liens, encumbrances, adverse claims, or other matters:*
>>>
>>>>*(a)     created, suffered, assumed, or agreed to by the Insured Claimant;*
>>>
>>>....
>
>The First Amended Petition specifically alleges that, in the Resolutions, the CID and the TDD made certain representations regarding the manner and formula under which special assessments would be levied and reallocated and alleges that the Insured relied upon those representations in purchasing the Property. These allegations in the First Amended Complaint establish the following: (1) the Insured was aware that Property was within the boundaries of the CID and the TDD; (2) the Insured was aware of the Resolutions; and (3) the Insured relied upon the Resolutions in the purchase of the Property. As such, the Insured assumed and agreed to the Resolutions and the Special Assessments and the Company denies coverage for the claim.

(Defendant's exh. D, P. 2 (emphasis in original)).

On January 17, 2022, Plaintiff filed a Voluntary Dismissal of Counts V and VI in the District Litigation. (Defendant's Motion to Dismiss, ¶ 23 and att. exh. E). Plaintiff further moved to "correct its factual averments by deleting Paragraphs 22 and 24 of the First Amended Petition." (Defendant's exh. E, ¶ 1). According to Plaintiff, the court granted its motion to dismiss and delete.

6

(Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opp."), P. 4).[3]

In its motion to dismiss, Defendant asserts that the "factual allegations made by Plaintiff in its tort claims in the District Litigation, including most particularly the allegations that indicate Plaintiff knew about the TDD and CID and their respective Resolutions at the time it purchased the Property, constitute admissions by Plaintiff even though Plaintiff subsequently dismissed the tort claims (voluntarily and without prejudice)." (Defendant's Motion to Dismiss, ¶ 25). Defendant thus maintains it properly denied Plaintiff's claim, as Policy Exclusion 3(a) precludes coverage under the Policy. (*Id.*, ¶ 26).

Plaintiff has responded to the motion to dismiss as follows: "Defendant's motion is actually not a motion to dismiss at all, but rather Defendant is seeking Judgment on an unasserted affirmative defense based on its own intentional misstatement of the record, by which it attempts to create a contradiction of fact." (Plaintiff's Opp., P. 1). Plaintiff further argues that its allegations in the instant case state a claim for relief, and that Defendant relies on averments deemed incorrect (and thus deleted from the First Amended Petition in the District Litigation). (*Id.*, P. 4).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[3] Although Plaintiff purports to have attached the state court's order (*see* Plaintiff's Opp., P. 4), there are no exhibits attached to Plaintiff's memorandum in opposition.

7

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). "However, the Court does not have to accept as true allegations that are contradicted by documents and exhibits referred to in the pleadings." *Campbell v. Vox Media, Inc.*, No. 4:23-CV-00577-BCW, 2024 WL 2503226, at *1 (W.D. Mo. Feb. 22, 2024) (citation omitted).

## DISCUSSION

### A. Materials Considered

In its motion to dismiss, Defendant asserts the Court properly may consider more than simply the allegations in Plaintiff's Complaint in deciding this Rule 12(b)(6) motion. (Memorandum in Support of Defendant's Motion to Dismiss ("Defendant's Memo in Support"), P. 4). Specifically, Defendant maintains the Court may consider Plaintiff's tort claims and pleadings filed in the District Litigation, which Defendant claims are matters of public record and/or embraced by the pleadings, and contradict the allegations in Plaintiff's Complaint here. (*Id.*). Thus, as a preliminary matter the Court must determine whether, in resolving this motion to dismiss under Rule 12(b)(6), it may consider documents attached as exhibits to Defendant's motion to dismiss. *Worley v. AR Resources, Inc.*, No. 4:18-CV-1409-PLC, 2019 WL 480028, at *1 (E.D. Mo. Feb. 7, 2019).

"The inclusion of matters outside the pleadings may convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56." *Worley*, 2019 WL 480028, at *1 (citing Fed. R. Civ.

8

P. 12(d)). "However, documents necessarily embraced by the complaint are not matters outside the pleadings." *Id.* (internal quotation marks and citations omitted). Such matters include "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Muldrow v. Trileaf Corp.*, No. 4:22-CV-647-HEA, 2022 WL 13949207, at *1 (E.D. Mo. Oct. 24, 2022) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). *See also Doe v. Roman Catholic Archdiocese of St. Louis*, No. 4:20-CV-331-PLC, 2020 WL 7240353, at *6 n. 12 (E.D. Mo. Dec. 8, 2020) (quoting *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)) (Courts analyzing a Rule 12(b)(6) motion may consider "'the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record'").

With its motion to dismiss, Defendant submitted copies of Plaintiff's Petition and First Amended Petition in the District Litigation. (*See* Defendant's exhs. B, C).[4] Defendant asks the Court to consider allegations and claims that Plaintiff voluntarily dismissed in the District Litigation, specifically, (1) Plaintiff's claims for fraud/intentional misrepresentation and negligent misrepresentation, and (2) Plaintiff's allegations regarding its reliance on the Districts' representations regarding the manner and formula under which special assessments would be levied, the limitation on such special assessments, and the circumstances under which the special assessments could be reallocated.

Defendant cites *Bray v. Bray*, 629 S.W.2d 658 (Mo. App. 1982), in support of its assertion that the Court may consider Plaintiff's abandoned pleadings because they constitute admissions

---

[4] As noted above, Defendant relied on the First Amended Petition in its denial of Plaintiff's claim for coverage. (*See* Defendant's Motion to Dismiss, ¶¶ 19-20 and att. exh. D).

9

against interest.  (Defendant's Memo in Support, P. 3).  *Bray* was a child custody/support case in which the respondent father initially had full custody of the minor children.  *Bray*, 629 S.W.2d at 659.  In the litigation, the appellant mother requested an amended custody arrangement, given her improved financial situation.  *Id.*  Specifically, the mother "averred that she had a combined annual income with her present husband of over $30,000; that she had a family home worth between $50,000 and $60,000; and that she had an excellent credit rating."  *Id.*

When the father in *Bray* responded by requesting child support and attorney's fees, the mother withdrew her request for an amended custody arrangement, and contradicted her earlier claims by testifying that she had no income and her present husband supported her financially.  *Id.*  At the father's request, "the court took judicial notice of appellant's averments concerning her financial position in her withdrawn motion to modify", holding as follows:

> Courts may take judicial notice of their own records.  In [her withdrawn motion to modify] appellant claimed to be in an excellent financial position…Such statements in abandoned pleadings are admissible as admissions against interest and for impeachment.

*Id.* (internal citations omitted).  Importantly, however, *Bray* was not decided on a motion to dismiss, but rather after the completion of discovery and one day of trial.  *Id.* at 660.

Based on the foregoing, Defendant maintains the Court may consider Plaintiff's dismissed allegations and tort claims from the District Litigation when deciding this Motion to Dismiss. Defendant asserts said allegations demonstrate that Plaintiff had knowledge of the TDD and CID before purchasing the Property, thereby establishing Defendant's right to rely on Exclusion 3(a) and deny Plaintiff's claim under the Policy.  (Defendant's Memo in Support, PP. 4-10).

Plaintiff responds by noting it specifically alleges in its Complaint that Plaintiff "'did not have knowledge of the existence of the TDD or CID, much less their power to levy Special Assessments on the Property prior to closing on the purchase of the Property.'" (Plaintiff's Opp., P. 4, quoting Compl., ¶ 28). Plaintiff contends Defendant improperly "attempts to utilize prior allegations that were specifically identified as incorrect and were deleted and dismissed by the Court to argue there is a contradiction." (*Id.*, P. 2). Plaintiff thus maintains there exists nothing in the current record properly before the Court to support granting Defendant's motion to dismiss. (*Id.*, P. 4).

Missouri law[5] generally provides that "an abandoned pleading may be admitted as evidence *in the proceeding in which it was originally filed* to establish admissions against interest or for impeachment purposes." *Riley v. Union Pacific Railroad*, 904 S.W.2d 437, 442 (Mo. App. 1995) (emphasis added) (citing *Danneman v. Pickett*, 819 S.W.2d 770, 772 (Mo. App. 1991); *Bray*, 629 S.W.2d at 660)). *See also Bank of America, N.A. v. Stevens*, 83 S.W.3d 47, 56 (Mo. App. 2002) (same). Here, Defendant does not ask the Court to consider abandoned pleadings from this proceeding; rather, it requests that the Court take into account Plaintiff's abandoned allegations from the District Litigation when deciding the instant motion to dismiss.

The Court recognizes it need not accept as true allegations that contradict matters properly subject to judicial notice, even on a motion to dismiss. *See Lammert v. National Surety Corp.*, No. 4:18-CV-1993-RWS, 2019 WL 698121, at *1 (E.D. Mo. Feb. 20, 2019); *McCarty v. Dana Holding Corp.*, No. 4:08-CV-690-CEJ, 2008 WL 4865038, at *3 (E.D. Mo. Nov. 7, 2008). Under the

---

[5] When exercising diversity jurisdiction, the Court applies the forum state's substantive law to state law claims. *See Hallmark Specialty Ins. Co. v. Phoenix C & D Recycling, Inc.*, 999 F.3d 563, 567 n. 7 (8th Cir. 2021).

11

circumstances of this case, however, including both the timing of Defendant's motion (early in the proceeding, before any discovery has taken place), and the lack of clarity in the present record, the Court declines to take judicial notice of Plaintiff's withdrawn allegations from a separate proceeding.[6]

### B. Motion To Dismiss

"Under Missouri law, the elements of a breach of contract include: (1) a contract, (2) the parties had rights and obligations under the contract, (3) breach, and (4) damages." *LO NG Pharmacy Corp. v. Express Scripts, Inc.*, --- F.Supp.3d ---, 2024 WL 3967127, at *4 (E.D. Mo. Aug. 28, 2024) (citing *Roe v. St. Louis Univ.*, 746 F.3d 874, 885-86 (8th Cir. 2014)). In its Complaint Plaintiff alleges in part as follows: (1) Plaintiff obtained an Owner's Policy of Title Insurance from Defendant, insuring title to the Property; (2) the special assessments levied by the TDD and CID are liens of real estate taxes or assessments imposed on the title to the Property, and thus constitute covered risks under Section 2(b) of the Policy; (3) Defendant denied Plaintiff's claim for coverage under the Policy; and (4) Plaintiff has suffered damages. (ECF No. 7).

As noted above, in its motion to dismiss Defendant asserts that Plaintiff's claimed loss falls within an exclusion from coverage. Defendant notes that the following matters are expressly excluded from coverage of the Policy: those that "arise by reason of…[d]efects, liens, encumbrances, adverse claims, or other matters created, suffered, assumed, or agreed to by the Insured Claimant." (*See* Compl., att. exh. 1, P. 2). Defendant maintains Plaintiff knew of and

---

[6] The Court notes that Defendant does not simply ask the Court to take judicial notice of Plaintiff's abandoned allegations. Instead, Defendant asks the Court to accept the abandoned allegations, and then utilize them to justify Defendant's interpretation of its Policy and denial of Plaintiff's claim. The Court declines to do so on this motion to dismiss.

agreed to the resolutions and special assessments, and so there exists no coverage under the Policy. (ECF No. 11).[7] Plaintiff responds that its allegations in the instant case state a claim for relief, and that in saying otherwise, Defendant relies on averments that were deemed incorrect (and thus deleted from the separate lawsuit). (Plaintiff's Opp., P. 1).

Having declined to both take judicial notice and accept Defendant's conclusion regarding the significance of the allegations in the District Litigation to the lawsuit before this Court, the Court concludes that Plaintiff's Complaint survives the instant motion to dismiss. Defendant's motion to dismiss will therefore be denied.[8]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 11) is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of November, 2024

---

[7] Specifically, Defendant asserts that in an "attempt to avoid Exclusion 3(a) and create coverage under the Policy that did not exist at the time of the Denial Letter, Plaintiff now alleges in this case that it did not have knowledge of the existence of the TDD or CID prior to closing on the purchase of the Property. *See* Complaint at ¶ 28. This allegation is starkly contrary to the tort claims asserted by Plaintiff in the District Litigation…" (Defendant's Motion to Dismiss, ¶ 24).

[8] The Court notes the two principal cases Defendant cites to in support of its assertion that Exclusion 3(a) supports its denial of Plaintiff's claim were both decided on summary judgment. *See First American Title Ins. Co. v. Lane Powell PC*, 764 F.3d 114 (1st Cir. 2014); *Mazel v. Fidelity National Title Ins. Co. (In re Lamey)*, No. 14-13729, 2020 WL 4045254 (Bankr. D.N.M. Jul. 17, 2020).